Case No. 15-1299 at L. ABM Onsite Services-West, Inc. Petitioner v. National Labor Relations Board Mr. Hall for the petitioner, Ms. Gay for the respondent, and Ms. Nagish for the intervener Good morning. May it please the court, Doug Hall for Petitioner ABM. I'd like to reserve three minutes for remodel. I apologize for my voice. I've been fighting the flu the last couple of days. Stay right there then. No, I'm feeling better. It has affected my voice. Yeah, I'd hope you're feeling better. When an agency departs from its past precedent without providing a reasoned explanation for doing so, its actions are arbitrary and must be set aside, even under the most deferential standard applied to judicial review of agency action. And that is the situation we're dealing with here today. In a handful of recent decisions, the National Mediation Board has broken from its past precedent in determining whether an air carrier exercises sufficient control over one of its contractors to bring the contractor within the scope of the Railway Labor Act. Could you help me understand the relationship between the board and the NMB on matters like this? I mean, is the NLRB bound somehow to follow the decisions of the NMB? I believe it would be, Your Honor, and it always has. The RLA came first, and when the NLRA was created, it accepted those covered by the Railway Labor Act from its definition of employer and employee. The NLRB had long had a practice that, in 1995, in its Federal Express decision cited in our papers, it expressed as longstanding that, though occasional departures might be warranted from time to time, the better practice was, let's refer... Well, I think in that situation, the NLRB essentially steps into the NMB's shoes and has to defend the NMB's actions. But the ability of those who are subject to that ruling, such as AVM here, must have the ability to challenge it. The only way we have is through a proceeding like this. What happens if the NMB hasn't, at least as far as we can tell, acknowledged that it's had a change in course? And so if you're sitting there on the NLRB and you look at some earlier cases, pre-2011, they look like they're in NMB jurisdiction, and you look post-2011, they're out, and you see no explanation from the NMB, then what's the board supposed to do? Is it supposed to define as best it can where they're headed? Is it supposed to apply current law? Or is it supposed to say, throw its hands up and say, you saw this, NMB? I think the NLRB should be requiring the National Mediation Board, to the extent the National Mediation Board is departing without reasoned explanation, for providing a reasoned explanation. And I think the NLRB itself has recognized, in this case and others, that the board has departed from its past task. So the NLRB can't require the NMB to do something, right? The NLRB cannot require the NMB to do something. It cannot, I think that's correct, Your Honor. But certainly, the NLRB is unstuck with what the NMB has done. I'm sorry. The NLRB is stuck with what the NMB has done. So if the NLRB had sent this to the NMB, is there any doubt what the NMB would have decided? I believe there is. Maybe that's a bit strong. I believe there is. I think even under what we think is the improper test that the NMB has been advancing lately, that we could have made the argument that even if you looked just at the role of our personnel decisions, we would have been able to satisfy that. But, be that as it may, that didn't happen. But we believe even under that circumstance, we wouldn't have been able to make that argument, and would have liked the opportunity to do so. That's one thing I was very confused about. So if this had been sent to the National Mediation Board, and you had made these arguments, and you said, look, we are exactly like pick-your-feet-pre-2011 case. Sure. And you went through a little different stuff here, and you haven't told us why, and you make all your arguments. And they said, no, we like the post-2011 world better. You lose. Can you seek judicial review at that point? Because it's an...  Well, again, because it's an advisory opinion that's being sought by the NLRB of the NMB that then goes to the NLRB, which the NLRB then has to adopt. That's the only way we'd have to get to it. I'm not aware of any procedure we have. They would say, you're not covered by the National Mediation Board, and so then you're covered by the NLRB. The NLRB would adopt that, presumably. And then, say it happened here, then you go into an unfair labor practice, so you could challenge the NLRB decision, but then we would just be reviewing... Would that give us the ability to look back at the National Mediation Board that started the problem, or would we just say NLRB did what it should do? I think you'd have to look at the NMB decision. I don't think there's any other way to get judicial review. You think what now? I'm sorry to hear that. I'm sorry. You'd have to go back and look at the NMB decision in that situation that Judge Millett is... On the theory that the NLRB... Because we can't directly review the NMB decision. Correct. So what you're suggesting is because the NLRB would have adopted the NMB decision, then we're reviewing the NLRB decision. Correct. It's just that we're effectively reviewing the NMB decision because the NLRB would have, by hypothesis, incorporated it. Is that what you're... That's right, and otherwise there'd be no means for judicial review of what we think is an arbitrary agency decision because of the procedural way it's being imposed upon the parties. In other words, your view is the NLRB can choose to address this in a variety of ways, but once it chooses to just adopt what the NMB has done, if the NMB has changed without any adequate explanation of the way the NMB has changed, the NLRB has bought into that, and that's... I think it might be a slightly better case for the NLRB if it had actually sought referral from the NMB, and the NMB made a decision based on these particular factors. Well, it wouldn't give the NMB the opportunity to explain why. No, but I think the hypothetical that's been given to you by Judge Millett is suppose that the NLRB did do the referral, and then the NMB just says, this is like our most recent decisions. Based on our most recent decisions, the company is subject to the NLRB, not NMB, sends it back without explaining why the latest decisions are different, adopt a different focal point than the earlier decisions. So we're kind of back in a situation where the NLRB just says, okay, now we have the NMB's guidance. The NMB has said that it's following its most recent decisions. Under its most recent decisions, this is a company that's subject to NLRB jurisdiction. That comes up under judicial review, and then we're in a situation in which the NLRB would have adopted the NMB's guidance, but the NMB would not have explained why its new decisions depart from its old ones. That's correct. You're right. I stand corrected. And in either case, the key is that we haven't been given an explanation for the change, right? That's right. No effort to reconcile conflicting precedent. That's right. So this test has traditionally been a multi-factor test. Right. The way this is now being applied, it's a single-factor test. What is the role of the carriers and personnel decisions? But even with respect to that, that factor has been now applied 180 degrees from how it was without providing a reasoned explanation. So in these recent cases, and this is part of why it's so difficult to understand what the National Mediation Board has done, in the Huntley, in the APS, the BAG, Menzies, airway cleaners, they actually continue to give lip service to the multi-factor test. And then they also continue to cite cases arising under the period from 1996 to 2011, but the way they describe them is totally incorrect. For example, in Huntley, they found that there was not sufficient control over personnel decisions because the carriers could report problems or misconduct, but the decision to discipline or discharge is made by Huntley. Same in all these other cases. Same in the case here. Let me interrupt you for a second and back up a little bit, traveling up on Judge Strinovac's questioning. So if we agreed with you, what's the appropriate remedy here? Is it that we instruct the NLRB to send it back to the NMB as they've done in the past and start over there? I think that would be the appropriate remedy. Otherwise, I don't know how the NLRB could offer what the NMB's reasoned explanation for departing from its past precedent would be. Why would we have to do that? Because it sets the question. The NLRB just decides to refer things to the NMB. It doesn't have to. It does not have to, but then if it doesn't, it's stuck with. I don't know how it would defend. If you find, as we think you should, that the NMB has departed from its past precedent arbitrarily, and then you vacate and set aside. That's what the APA requires, vacate and set aside the orders that are arbitrary. So now we're back at we don't have a decision in the direction of election. What is the NLRB going to do? Is it going to decide again itself what the proper test should be without referring it to the NMB? And I suppose it could. I mean, it's just that it may be that the NLRB concludes in this hypothetical situation. It may be that the NLRB concludes that it has to send it back to the NMB, but that's for the NLRB to decide. The UPS decision in this court is interesting on that because on the one hand it did seem to suggest, as you say, that you don't have authority to order the NLRB to do so. Nonetheless, it did analyze whether the refusal in that case was arbitrary or not. And so I think you could end up in a situation where if it's not arbitrary, at least then the NLRB is stuck with a morass because, again, it can't offer up why another agency has departed from its precedent. Well, at this point, we don't really have to address the do they have to. The rule of decision in the NLRB is we will send it over unless the answer is clear from prior decisions. And so if they were to depart from that, then we would just be reviewing whether the NLRB is adhering to its rule of when it refers and doesn't refer, right? That's right. I had a fact question, too. I thought I saw somewhere in the record that your contract between ABM and Consortium expired in 2016. Did it expire? Do you still have a contract? They still have the contract. Yes, it's been extended. It's been extended. Yeah. So we're not in a moot situation. Well, I'm not understanding one thing, though. Yes, it's true that if we think that the NLRB acted arbitrarily in not sending it back to the NMB per the NLRB's own standards for when it does that, that's a viable route to rule in your favor. Yes. But that's not to the exclusion of another one which says that whatever the circumstances may be, there's an unexplained departure from a prior rationale. That's just something for the NLRB to work out. It may be that the way it works, it has to send it back to the NMB. It may be that it doesn't. I'm not sure why we know which one of those necessarily takes precedence over the other one. Right. I'm just having trouble myself trying to come up with how the NLRB would handle that and then what would this court be reviewing. So can I ask one question to get back to a place you started with, Judge Millett, which is the relationship between the two agencies and the two statutes. So under the NLRB statutes, it defines the term employer as follows, but then it says, but shall not include any person subject to the Railway Labor Act. So it's the NLRB's employer statute, definition of employer, which the NLRB has authority to construe, that is ultimately what's being construed here. Well, but when that exclusion requires the explication of a statute that is not that agency's statute, this is the Cheney v. Railroad Retirement Board case we cite in our papers, where the issue was whether a particular railroad was subject to those statutes which required interpretation of the Interstate Commerce Act. This court held in that case you're not entitled to deference because you have to interpret a statute that's not your own. We would say the same analysis applies here. And, again, here the National Labor Relations Board has historically noted its lack of expertise and that the board has that, which is why it has had this historic practice of referring things over. Right, so it may not get deference because it itself has said that with respect to this part of the definition, which is determining whether an employer fits within the exclusion because it's a person subject to the Railway Labor Act, it's sent things over to the NMB for the NMB's determination in the first instance. And I think there certainly are circumstances where it makes sense that it didn't do that. Now, the Spartan Aviation case that they cite was a situation whether it was a flight training school subject to the Railway Labor Act or not, and the board, NMB, had just said no, so why send the same case over? Air California, intrastate as opposed to interstate commerce not covered by the Railway Labor Act, NMB had decided why send it over. What they're doing here now, though, is basically saying we're not going to send any cases over for referral because there have been some cases where contractors have been held not subject to it. So it's not the same kind of analogy. It's not analogous to what they've done in the past when they haven't referred. Now they're basically not referring anything. I'm not aware of any decision, never been any decision since Menzies more than two years ago that arose out of the NMB from a referral from the NLRB. But I thought that's because the NLRB, at least the regional director in this case, is focused on the most recent decisions. And if you only focus on the most recent decisions, then what the NLRB is telling us through the regional director is, under the most recent decisions there's no reason to send it over because this case is functionally identical to the most recent decisions. Well, the point is there's never been the whether, historically at least, whether these factors have met is a very fact-specific inquiry that requires analysis of several different things and weighing. And the board has never, the NLRB board had never refused to refer things because of the control factor was at issue. I think by saying basically now we're not going to require any cases to be sent over, you can argue the NMB is essentially a ceded jurisdiction to us now, a rail line service provider. I think that has the risk of minimizing NMB's expertise in these areas, especially because it hasn't defined what is a typical contract between a carrier and a contractor that would be relevant for the inquiry that is spun out. So I wanted to go back to make sure my point that I tried to make is clear about how the role in personnel decisions has changed. So in these cases, including this one, the rule that has now been created is that when a carrier can request removal or report misconduct, that's not enough if the employer, the contractor, conducts its own investigation or can decide to transfer someone instead of discharge. In these cases, we need... Can I ask you a question on this too, just how this works? When you're doing this analysis or when one of the two boards was doing the analysis, do you look at the legal authority to get involved in personnel decisions, the legal authority to look at records, or do you look at, in practice, are they getting involved or exercising these rights? Because it seems like both sides would go back and forth between that depending on how it helped or hurt them. You look at both. So the NMB has looked at both. They looked at the contractual requirements. Did the contract give them the right to request removal? Does the contract give them the right to access the records, to audit, et cetera? And they also look at how things worked out in practice. In practice, has the carrier had an effect on these criteria? So both are relevant. So in these recent cases have found, and the board in this case found... You're well over time. Let's finish up that last point quickly. Sure. There's several cases. The one I'll highlight for you is AirServe from 2006. That was a case in which they had one customer in San Francisco, United. United responded to an NLRB request for information. The United letter specifically said we have no role in discharge. We have no role in even discussing any of these personnel decisions. The most we do is we occasionally refer incidents that we've observed to the contractor that might require investigation and discipline. That very case was cited in these most recent cases by the NLRB. We'll give you back some time. Thank you. Good morning. Good morning. Amy Gent with the NLRB. I'll start with the referral issue. So here the board started its inquiry, or the regional director started his inquiry by saying, do we need to refer this case to the NMB, or has the NMB already spoken on this issue, and found that the issue had been spoken to, in particular in a series of recent cases where the board did refer to the NMB for an advisory opinion. And so the cases that we rely on, such as Baggs and Menzies and Airway Clears. The question I have is there seems to be no effort by the board to take cognizance of the fact that there's another set of recent precedent that come out in a different direction. There doesn't seem to be any grappling with that. And as you know, it's a fundamental principle of administrative law that when an agency changes course, they need to give an explanation. There's no question that we're in a different world today under the most recent decisions than we were just five or six years ago. And yet we have no explanation from either board how we got to that new world. The NLRB here followed its precedent in looking to the NMB's decisions to see if the issue was clear. So in that way, the NLRB read what it had before it, which were these recent decisions where the NLRB said to the NMB, we need your advice on these types of cases. The NMB responded, applying the same six-factor carrier control test that it had applied previously, adding language that was new in those cases about a typical subcontractor relationship. And when the board got this response several times over in these very factually similar cases, the NLRB then said, under our precedent, this question has been answered, the law is clear. So here's what seems to be a little tricky about this. So let's just hypothesize that the NLRB is right to predict that recent decisions would lead the NMB to conclude that in this case, the company is not an NMB company but is an NLRB company. Let's just hypothesize that that's true. That may be contestable. Let's just hypothesize that's true. But if it's also true that it's only the recent decisions that would have done that and that a wave of decisions before that would have reached the opposite conclusion, then what are we supposed to do? Because you may be right that as a matter of prediction, the NMB is going to give you the answer that the regional director reached. But then there's still an administrative law question because that prediction would have been based on a change in the way the NMB is looking at this that's been unexplained, and that's what we have before us. In terms of the NMB's own decisions, I mean, again, the way I can speak to how the NLRB read those decisions, and the NLRB read those decisions to say we're applying the same test, this is how we're weighing the factors in that test. And that's what the NLRB did here. I mean, I would say also that that's what the NLRB had the authority to do here. Well, that's the question. So suppose that the lay of the land, just assume that this is the lay of the land. The NMB has radically changed course on the way it approaches this. It may describe it under the same six factors, but let's just hypothesize, just bear with me, and say they've radically changed course in the way they apply those six factors, whereas pre-2011 this case would have come out one direction, i.e., that this company is subject to NMB jurisdiction. Post-2011 it's radically changed course so that it comes out the other way. And the NLRB just says, okay, we're basing it on the most recent decisions. This is a company that's within our jurisdiction. We go forward. But then, by hypothesis, there's been a radical change of course that's been unexplained. Does that – where does that leave the NLRB? Sure. I mean, by hypothesis, if there is a radical course change that has been unexplained, I mean, the – I guess I would say this, and this goes back to hypothetically you were discussing a minute ago, which is if the court were to say that a recent explanation is required, I mean, at this stage of the case, the case would go back to the NLRB, right? And so then it would be up to the board then to make a decision, obviously whether they thought they had authority or could provide some explanation or who they thought should provide that explanation. I guess that's the best that I could probably do with that. You had said that the board's test for referral is whether it's clear how the National Mediation Board would come out. Did the NLRB explain here or in some other case how it determines clarity? With how long a memory does it determine clarity? No, I wouldn't say that the board set out a test for making that initial assessment. Is that a problem here, though? I mean, we're not talking about going back to ancient history. We're talking about, like Griffith said, within the last six years, five years, we're seeing a difference. And it might be clear – I don't know what happened in 2011 as opposed to 2011, but it looks like a clear answer the other way. This is a situation, though, where the board was reading advisory opinions that it received from the NMB. So the board was sending over cases, getting back answers with – I mean, answers with application of the factors, the facts of the case, all those types of things are contained in these decisions that we can read to understand how the NMB is applying the test. And, I mean, at a certain point, and I think the regional director reached that point here of saying, okay, we've sent over a certain number of these cases, and we keep getting back the same answer. So at this point, it's clear what answer we will get, or it's clear at the very least what answer we will get as to what the test is. And then the regional director here, based on fact findings from the record, applied that test. After being told by the NMB multiple times what the test was. That just raises another question for me. I'm not sure I even understand what the NLRB's test for referral is. It came out as a similar case without jurisdiction. And then you said, which I think is probably consistent with what the board has said before, we want it to be clear. And now you're making it sound like, well, we just need to know what the legal test – that's what has to be clear, as opposed to how they apply the facts to that legal test. Or the lens through which your emphasis should be due on the factors. I would describe it as a two-step process. And if this isn't responsive, then please let me know. First, the board decides whether to refer a case to the NMB by seeing if the NMB has answered similar questions such that the law is clear in terms of answering a similar question. When you say what the law is clear, do you mean the outcome or if the legal test is clear? I would say to a certain extent both, but more in terms of what the legal test is. Because the board is not saying – the board still is then going to apply the NMB's test. So the board isn't just going to say, in these other similar cases, we know not only what test the NMB applied, but that in all those cases the NMB said they didn't have jurisdiction, so we don't have jurisdiction here. I mean, the board went on to then take another step in the process, which is to gather the facts, hold a hearing, gather evidence, and then take that evidence and apply the test to those facts. So there is another step in the process when the board could have arrived at – the labor board could have arrived at a different result because of the evidence that came in through the record. What the board said in the Federal Express decision is that it doesn't need to refer when the case involves a factual situation similar to the one in which the NMB has previously declined jurisdiction. So it's looking at the factual situation. It's not just looking at the legal test. I would agree. It is also looking at the factual situation. I think what I was trying to clarify is that the board, at that point in deciding not to refer the case, is not already saying there's no – I mean, so here the board could have referred the case before even holding a hearing or something like that. So here the board decided not to refer the case, at least because it seemed factually similar and the law seemed clear enough to hold a hearing, and then at that point the board still could have applied the NMB's test and come out a different way because it's still engaged in that second fact-finding process after its initial decision not to refer the case. Or the board could have, after holding a hearing, decided to refer the case at that point. Does the board get any deference in determining whether the National Mediation Board position is clear? Does the NLRB get any deference in determining this? What deference would you be entitled to in this up-front determination as to whether the state of National Mediation Board precedent is clear? So the decision as to whether to refer. I would say in terms of the decision whether to refer, I mean, this court in the UPS case said that there's no – the board and the NMB, neither entity or agency necessarily has precedence in deciding these questions of jurisdiction. And so – and the court also said in UPS that there was no legally compelling reason that the board could be required to refer a case to NMB. So I would look to – that doesn't answer specifically the deference question, but I would look to that in saying that the board does not have an obligation to refer to NMB. Even though the board itself is recognized in its own words the primary authority and primary jurisdiction of the Mediation Board to make this decision? I guess you'd have to explain why you were departing from that. I don't know that the board in seeking advisory opinions has said that the – I mean, the board has said that they are letting – No, they said primary jurisdiction and primary authority. Over the – over RLA. Yes, I'm sorry. I'm sorry. All over this question. All right, over these questions. So you got this turf war. Not this war you all have been quite – Sure, sure. Well, right. I mean, it's clear that the NMB has primary authority to interpret the RLA. And so to that extent, yes, the board – and the board has recognized that. I'm sorry if I didn't understand. First of all, that's what you're saying. I do think, though, that precedent such as from this court is clear, that the board does not have an obligation to refer those cases to the NMB. I also would say that in terms of the board making a decision whether to refer in this situation as to whether there is enough clarity, I mean, the board in that case is looking at its own precedent and cases where it referred and didn't refer. And to the extent the board's looking at its own precedent, I would say that the board would receive deference. Great. Thank you. We'll hear from the intervener now. Good morning, Your Honor. David Nagus for Intervener International Association of Machinists, or IAM. The board has not always referred cases to the NMB. And historically, if you go back to the 1960s and the Dobbs case in 1971, the board didn't refer it to the NMB, didn't think it had a primary jurisdiction. And the Sixth Circuit upheld that determination to decide it in the first instance. The other thing that the court in Dobbs' houses did was it analyzed what a typical subcontractor, what I'll call a typical subcontractor was versus what an RLA contractor was. And it goes back to cases that were decided right after the 1934 RLA amendments. So in Dobbs' houses, it looked specifically at two cases, one called Fred Harvey, where the contractor, it was under carrier control because it prohibited, because Fred Harvey worked only for, had a contract with Santa Fe Railroad. It was prohibited from working for any other contractor, other railroad or any other entity other than Santa Fe, without the express permission of the railroad. And it was also in years when the Santa Fe, when the contractor, Fred Harvey, had losses, Santa Fe covered the losses. In years when there were profits, Santa Fe shared in those profits. If you go back to the court's, the circuit decision of the Eighth Circuit in Reynolds, the court defined what a RLA contractor was. And the types of contractors we have, you know, that we're deciding about here, do not fall in those categories. An RLA contractor, according to the Eighth Circuit in Reynolds, is one which so surrendered its right of control or failed to exercise it in fact, as to have lost its effect, in effect, its identity or status as a separate business enterprise in furnishing services involved. That's the kind of contractor Fred Harvey was. But it's not the kind of contractor ABM was or Dobbs Houses. If you look at Dobbs Houses, it has all of the same indicia of control. The test that you just quoted from the Eighth Circuit, does the National Mediation Board say that? No, that was the Eighth Circuit. It's not the National Mediation Board's test. No, it was not the National Mediation Board. But what I'm saying is that in the recent cases with the six factors, what the NMB has done is found that there's a typical subcontractor relationship which is different from an RLA contractor. In that with an RLA contractor, the carrier puts limitations on the contractor's ability to operate as a separate business entity in its own business interest as opposed to satisfying a client's operational desires or giving weight to the client's opinion. If you look at the case in Dobbs Houses, like ABM, Dobbs Houses had very meticulous and demanding airline customers that required adherence to detailed specifications and manuals, gave direct orders to the contractor's employees, and could request removal of contractor employees from their airplanes. Dobbs Houses also alleged that ten of its employees at other airport locations were discharged at the request of airlines. But despite the presence of those indicia of control, the Sixth Circuit found no RLA jurisdiction. Thank you. We have your argument, Mr. McKinney. We appreciate it. Thank you, Your Honor. How much time does Mr. Hall have? Mr. Hall, is there anything you'd like to say? No. If you have rebuttal, we'll give you a minute. But only if you have something to rebuttal. Certainly. Just with respect to what Mr. Nygus was just stating about the Dobbs House and Reynolds, we could all argue about whether the NMB should or could adopt a typical subcontractor relationship, as it's more in line with Dobbs. That doesn't change the fact that if it does so, reasoned decision-making by the agency requires that they explain why. That's Allentown Mack, the Supreme Court's decision in that case, and numerous others. That's all I'll leave you with. Thank you very much for putting up with my voice today. Great. Thank you very much. The case is submitted.
judges: Griffith, Srinivasan, Millett